(Decided March 26th, 1863.)

---

## RICHARD H. STEVENS *vs.* HENRY YEATMAN.

Where a partnership is liable to be dissolved at the will of either partner, the consequence of a dissolution by either, is to throw the settlement of their partnership affairs into a Court of Equity, unless they can agree as to the mode of settlement.

The question, as to which of the partners may, by his conduct, have caused the discord between them, is never considered with a view to an adjustment of the costs of a settlement of their partnership affairs in Court.

A party litigant, who, jointly with the opposing party, accepts the benefit of proceedings in Court, and influences and directs the mode in which they are to be conducted, must bear his fair proportion of the expenses of such proceedings.

In the settlement of partnership accounts, each partner is to be charged "with what he has failed to bring in;" and when "partnership articles contain provisions for the advance of particular amounts towards the capital stock, at particular periods, in such cases the party so contracting is treated as a debtor to the firm to the full amount so to be contributed or paid, as *debitum in presenti solvendum in futuro;* and, indeed, he stands in equity, as to such debts, precisely in the same relation to them as if he were a third person, who was a debtor thereto."

APPEAL from the Equity Side of the Circuit Court for Baltimore city.

The bill of complaint in this cause was filed by the appellee against the appellant, on the 3rd of November 1856, for dissolution of partnership, account, appointment of a receiver, and for an injunction. The bill states the formation of a partnership on the 12th of August 1856, and the terms of the partnership; that during a temporary absence of the complainant from the city of Baltimore of a few days, at the request of the defendant, he discovered that the defendant had withdrawn from bank all the funds of the firm, a considerable sum, and paid away the same to creditors of the firm, and taken exclusive possession of all said funds and evidences of debt owing or due the firm, and had passed the same to various creditors of the firm, whose claims were not then, or at the time of the filing the bill, due, and that said evidences of debt were also not due; that without the assent of the complainant, the defendant had, during his absence, sent several hundred dollars worth of the stock of the firm to his individual store, at Norfolk, Va.; that the only reason assigned for this course by the defendant, was that he understood the complainant was dissatisfied, and wished to get out of the business; that the defendant declined to make any proposal for

an amicable adjustment of the difficulty thus created by him, but required the complainant, without cause, provocation or adequate reason, to concur in publishing a dissolution, and to leave the property and effects of the firm, without any co-operation on the part of the complainant; that the defendant had adopted a course of liquidation without sufficient reason, and evinced a determination to dissolve and withdraw suddenly, and to the ruin of the complainant's interests, and the blasting of the, prospects of the firm; and that such course was uncalled for, inimical and unprovoked, and therefore inequitable. The prayer of the bill is for an injunction, the appointment of a receiver, account, for re-payment of the complainants contribution, and for general relief, and asked for an answer under oath.

The injunction, as prayed for, was issued, and a receiver appointed, the complainant's solicitor, with whom the solicitor of the defendant was afterwards associated as co-receiver.

The answer, filed March 2nd, 1857, admits the partnership and its terms, as alleged, explains why the defendant's share of the capital was not brought in until January 1857, two months after the filing of the bill, refers to the partnership books as exhibiting the accounts truly, denies that the complainant had left the city at the defendant's request, or that he ever excluded the complainant from the rights of a partner, and insists that the complainant's dissatisfaction and complaints were the causes of the dissolution.

The answer further denies that the defendant ever objected to an amicable adjustment of the said difficulties, but that so soon as he discovered the discontent of the complainant, he reduced to writing the articles of partnership agreed on between them, and which imprudently had not been theretofore reduced to writing, and tendered the same

to the complainant for signature, who, however, refused to sign the same, without tendering on his part any agreement of a more satisfactory nature; and avers that the defendant "has assented to a joint receivership, and files this his answer, most readily submitting himself to an accounting, as prayed for in said bill, but insisting that the same, and *all the costs and expenses growing out of these proceedings, incidentally or otherwise, shall be at the cost and expense of the said complainant,* by whose unnecessary act they have been most wrongfully sustained."

Commissions were issued, and a mass of testimony taken on both sides as to the alleged causes of the dissolution, and the circumstances rendering it necessary or otherwise.

After a hearing, on a motion to dissolve the injunction and rescind the order appointing the receiver, the cause being submitted at the same time for final hearing, the Court below, (KREBS, J.,) on the 5th of March 1858, filed an opinion in the case, and on the 5th of June following, passed a decree in conformity therewith, continuing the injunction and receivership, and ordering the statement of two accounts by the auditor of the Court, "in one of which he shall allow to the complainants, as against the defendant personally, or out of the defendant's interest in the partnership funds and assets, if the same shall suffice therefor, the complainant's costs in this case, and the receiver's commissions as allowed or to be allowed; and in the other he shall deduct the said costs and commissions from the said partnership funds and assets, before making distribution thereof."

Accounts "B" and "C" were accordingly stated, to which both complainant and defendant excepted; and the complainant caused to be stated accounts "1" and "2," to which the defendant excepted.

On the various exceptions, the Court below (KREBS, J.) filed first, on the 31st of May 1859, the following opinion:

"In regard to the question of costs in this case, whether they should be charged against the defendant, Stevens, solely, or should be charged against the partnership fund, I am of opinion that the Court, in exercising a sound and proper discretion upon the subject, should order them to be paid out of the partnership effects.

"The filing of the bill in this case, and the appointment of a receiver, are not rendered necessary by any fraud of the defendant, or any misapplication by him of any part of the partnership effects, or by any apprehension of loss of the said effects, or of any part thereof, by permitting him to deal with them as partner, but because the personal relation of the partners had been such as to render it impossible for them to attend, together, to the winding up of their partnership affairs. The state of feeling existing between them was, it is true, caused by the abrupt and improper manner in which the defendant put an end to this partnership connection with the complainant. But in the view which I have taken of this partnership, it was liable to be dissolved at the will of either party, and the consequence of a dissolution by either, was to throw the winding up of their partnership affairs into a Court of Equity, unless they agreed in regard to the mode of settlement, and I can find no authority for throwing all the costs of a settlement of the estate in a Court of Equity upon the partner who refuses to continue the partnership, or whose consent may have caused the unfriendly feeling on the part of his co-partner, that prevents the winding up of the partnership affairs by their joint labor.

"The question as to which of the parties has, by his conduct, caused the discord between them, is never considered, with a view to an adjustment of the costs of a settlement of their partnership affairs, in Court. I am not satisfied that the defendant should be made to bear the whole expenses of these proceedings, simply because he

dissolved the partnership in the manner shown by the evidence, and proceeded to settle up its affairs in the prompt and unusual mode there stated. In all this, he meditated no injury or loss to the partnership effects, nor was any likely to result from it. Nor was this course taken from any malicious or improper feeling towards the complainant, but under the advice of counsel, and in the exercise of what the defendant supposed to be his just rights, and his letter addressed to the complainant on the day on which the bill of complaint was filed, but which it does not appear was seen by him until afterwards, shews that he was especially solicitous in regard to this very matter of cost, and particularly desirous to avoid the expenses of litigation and receivership. And it appears, further, that after the receiver was appointed, the administration of the partnership effects was, by the agreement of the parties filed in the cause, participated in jointly by the partners, the complainant and his solicitor, who had been appointed sole receiver, agreeing that the solicitor of the defendant should become co-receiver, and that the effects should be disposed in the manner and upon the terms mentioned in the said agreement. This circumstance has much weight in influencing the discretion which I have exercised in regard to these costs, and in satisfying me that they should be divided between these parties; for it appears to me that a moderate standard of equity would require that a party who, jointly with another, accepts the benefit of proceedings in Court, and influences and directs the mode in which they are to be conducted, should not object to bear his fair proportion of the expenses of such proceedings."

Subsequently, on the 24th October 1859, the said Court filed this further opinion:

"The complainants objected at the hearing of the exceptions to accounts reported by the auditor, that neither of them apportioned the losses of the partnership business of

the litigating parties properly between them. It appears from the proceedings, that by the terms of their partnership, they were required to contribute equal shares of the capital stock, though not both at the same time, Stevens not being bound to furnish his before the 1st day of January 1857, prior to which the firm was dissolved. It is a well settled rule, in the settlement of partnership accounts, that each partner is to be charged 'with what he has failed to bring in.' *Story on Part.*, sec. 347, *note.* And that when 'partnership articles contain provisions for the advance of particular amounts towards the capital stock, at particular periods, in such cases the party so contracting is treated as a debtor to the firm to the full amount so to be contributed or paid, as *debitum in presenti solvendum in futuro;* and, indeed, he stands in equity as to such debts precisely in the same relation to them as if he were a third person, who was a debtor thereto.' *Story on Part.*, sec. 203. This being so, in taking an account between these partners, Stevens should be charged with the difference between the sum of money which he contributed towards the capital stock of this firm, and that which was furnished by Yeatman, or, in other words, this difference should be treated as a part of the assets of the concern, and added to the amount thereof, before distribution made between them. An account stated upon this principle, will distribute the losses in proper proportion between them, and, in my opinion, would conform to the true mode practiced in equity, in adjusting accounts upon the principles above indicated. In regard to Jacob Noah's note, I am of opinion that Stevens should not be charged with the amount of it."

Afterwards, on the 26th day of October, in the year last aforesaid, the Court passed the following order:

"The matter of the exceptions to the accounts reported by the auditor, having been duly set down for hearing,

and argued, heard and considered, it is therefore by the Court, this 26th day of October 1859, adjudged and ordered that the proceedings be and the same are hereby remanded to the auditor, with instructions to state an account in conformity with the views set forth in the foregoing opinion, and report the same to the Court for its consideration."

Account "D" was accordingly stated and reported by the auditor of the Court, and on the 7th of February 1860, this account was finally ratified, and from the order of ratification the defendant appealed.

The cause was argued before BOWIE, C. J., and GOLDS-BOROUGH and COCHRAN, J.

*Geo. H. Williams,* for the appellant:

1st. There was no case for an injunction or receiver made out by the bill, and each and all of the exceptions thereto were well taken.

2nd. There having been no necessity for these proceedings, the whole cost and expense thereof should be borne by the party instituting them.

3rd. Every act proved to have been done by appellant, was strictly within the scope of the legal powers of a partner; the application of assets to the payment of debts, he not only had the right to make, but such was the only fair and honest disposition that could have been made by them. The firm of Stevens & Co. not having issued any promissory notes, there was no necessity for the retention of their bills receivable, and Stevens therefore had the right, and it was his duty, whether the partnership subsisted or was dissolved, to apply them as he did.

4th. The evidence as to the shipment of goods to Norfolk, shews that it was of surplus stock, and was either a shipment for account of, or a purchase from the firm, as

Yeatman might determine, and there is not, throughout the case, a particle of proof tending to shew any fraudulent intent on the part of appellant. At the time of the filing of the bill, Stevens' capital was not due and payable, and Yeatman having prayed for a then dissolution, no account should be stated treating him as a defaulter.

5th. Yeatman, by having chosen to break up the partnership, and have it settled through a Court of Equity, and by having declined the offer of Stevens in exhibit "W. C.," No. 3, caused the loss as ascertained by the auditor's report, and without these proceedings there would have been no loss, and the whole amount of such loss, therefore, should be charged to him, and no part of it to Stevens.

6th. That the bill not charging waste, or apprehension of waste, nor exclusion of Yeatman in his legal rights, there was no case for an injunction, and in any event the receivership was a gross impropriety. *Blondheim vs. Moore,* 11 *Md. Rep.,* 365. *Triebert vs. Burgess, Ibid.,* 461. *Nusbaum vs. Stein,* 12 *Md. Rep.,* 322.

7th. And that therefore the order of the Court of the 3rd November 1856, and the decree affirming it, was erroneous, and should be reversed.

*Wm. J. Ward* and *S. T. Wallis,* for the appellee, argued:

1st. That the course pursued by appellant, on and after 30th October 1856, entitled the appellee to a dissolution of the firm by the action of a Court of Equity; and consequently to the appointment of a receiver and to injunction.

2nd. That the appellant has no ground of complaint or for reversal, because the costs and commissions attendant and consequent on those proceedings, were deducted from the funds of the firm.

Stevens vs. Yeatman.

3rd. That having assented to the appointment of his own solicitor as co-receiver, and to the passing of an order by the Court below for the sale by the co-receivers of the stock in trade, &c., of the firm, (and the collection of its assets and outstanding claims, as embraced in "&c.," and as necessarily included,) he is estopped from objecting to the allowance of expenses and charges attendant on the performance of their duty under such appointment and order.

4th. That the bill exhibits ample cause for the action adopted by the Court below; and the irresponsive answer and the testimony taken, establish a case of wrong-doing, exclusion, constructively fraudulent dealing and inexcusable perverseness on the part of the appellant,—a due consideration of all which should relieve the appellee of all participation in the burthen of costs and commissions, and exempt him from joint liability to loss on Jacob Noah's claim.

The following authorities were relied on as applicable to all the foregoing points: *Drury vs. Roberts*, 2 *Md. Ch. Dec.*, 159. *Walker vs. House*, 4 *Md. Ch. Dec.*, 43. *Speights vs. Peter*, 9 *Gill*, 472 to 479. *Story on Part.*, 175, 176, 184, 225, 275 (*n.* 3,) 276, 287, 288, (*n.* 2,) 289. 1 *Story's Equity Jurisp.*, secs. 668, 669. *Collyer on Partnership*, sec. 354. *Gow on Partnership*, 221. *Blakeny vs. Dufleuer*, 15 *Beav.*, 40. *Harding vs. Glover*, 18 *Ves.*, *Jr.*, 281. *Wilson vs. Greenwood*, 1 *Swanston*, 480. *Const. vs. Harris*, 1 *Turn. & Russ.*, 496. *Law vs. Ford*, 2 *Paige*, 310. *Martin vs. Shunk*, 4 *Paige*, 480. *Henn vs. Walsh*, 3 *Edw. Chy.*, 130, 385. *Gowan vs. Jeffries*, 2 *Ash.*, 296. *Kennedy vs. Kennedy*, 3 *Dana*, 239.

GOLDSBOROUGH, J., delivered the opinion of this Court:

The only question for our consideration, in this case, is, did the Circuit Court err in finally ratifying and confirm-

ing the auditor's report, by the order of the 7th day of February 1860?

After a careful review of the bill, answer and depositions, we see no just reason to disturb the above order; and for the reasons assigned by the learned Judge who passed that order, the same will be affirmed.

  *Order affirmed, with costs to appellee in this Court.*

(Decided March 26th, 1863.)